W. EARL WILLIAMS AND ANOTHER v. JOSEPH L. DONOVAN.

92 N. W. (2d) 915.

November 14, 1958—No. 37,698.

*Carl W. Cummins, Jr.,* for petitioners.

*Miles Lord,* Attorney General, and *Harold J. Soderberg,* Assistant Attorney General, for respondent.

NELSON, JUSTICE.

Petitioners bring this action as an original proceeding in this court under the provisions of M. S. A. 205.78, which reads as follows.

*"When it shall appear by affidavit presented to any judge of the supreme or district court that an error or omission has occurred in the printing of the name or description of any candidate on official ballots,*

or that any other error has been committed in preparing or printing the ballots or that the president or secretary of any convention has failed to properly make or file any certificate of nomination, or that the canvassing board of any primary election has failed to make and certify any nomination, *or that the name of any person has been wrongfully placed upon the ballots as a candidiate, such judge shall immediately order the officer or person charged with the error or neglect to forthwith correct the same,* or perform his duty, *or show cause why such error should not be corrected or such duty performed."* (Italics supplied.)

On Thursday, October 2, 1958, August J. Duren presented to Joseph L. Donovan, Secretary of State, respondent herein, certain documents purporting to be a certificate of nomination by petition of said Duren as an independent candidate for representative in Congress from the Ninth Congressional District of the State of Minnesota. He thereby sought to have his name placed on the ballot for the general election of November 4, 1958, to contest the election of the Democratic nominee, Coya Knutson, and the Republican nominee, Odin Langen, both of whom were nominated at the primary election held September 9, 1958.

Duren's certificate is made under the provisions of §§ 202.19 to 202.22. Section 202.19 provides for nomination by petition under certain prescribed conditions and reads as follows:

*"The certificate of nomination of a candidate selected otherwise than by a convention of delegates shall be signed only after the holding of the regular primary election by electors resident within the district* or political division from which the candidate is presented, as follows: If for a state office on a state ticket, equal to one per cent of the entire vote of the state cast at the last preceding general election; *if for a congressional* or judicial *district office, by five per cent of the entire vote cast in any such district at the last preceding general election,* and if for a county, legislative or municipal office, by ten per cent of the entire vote cast in any such county, city, village, ward or other election district at the last preceding general election. *The number of signatures required shall not exceed* 2,000 for any state office, nor *500*

*for any congressional,* or judicial *district,* nor for any other office, provided that no person shall be nominated by petition pursuant to this section for any office now or hereafter declared to be a non-partisan office, except in case of vacancy or death or withdrawal of a nominated candidate. A person who has been a candidate for an office at the primary election in any year shall not be eligible for nomination for the same office in that year by petition or certificate under the provisions of this section." (Italics supplied.)

Section 202.20 provides that such certificate of nomination, which may consist of one or more writings, shall contain the name of the person nominated, the office for which he is nominated, the party or political principle he represents, expressed in not more than three words, and his place of residence. Section 202.21 contains the following provisions:

"All nominating certificates containing the names of more than one candidate shall be void. No person shall sign a certificate of nomination by voters until after the date of the primary election. *No person who has voted at a primary shall be eligible as a petitioner for any nomination to an office for which nominees were voted upon at such primary.*" (Italics supplied.)

Section 202.22 is concerned with the oath of signers and contains the following provision:

"Following the facts required to be stated in each certificate signed by voters, shall be written or printed an oath in the following form: 'I solemnly swear (or affirm) that I know the contents and purpose of this certificate, *that I did not vote at the preceding primary election,* and signed the same of my own free will.' *Each signer,* at the time of signing, *shall be sworn as aforesaid.*" (Italics supplied.)

It is clear that the sections of the statute with which we are here concerned use the words "electors" and "voters" interchangeably. This court has likewise in cases involving the election statutes used the words "electors" and "voters" interchangeably. In Johnson v. Bauchle, 149 Minn. 144, 182 N. W. 987, this court construed G. S. 1913, § 371, which was substantially the same as our present § 202.19 requiring

that electors should sign the certificate of nomination. This court in discussing the effect of the statute used the words "voters" and "electors" interchangeably when it said (149 Minn. 147, 182 N. W. 988):

"* * * We can conceive of no principle which permits the disfranchisement of innocent voters for the mistake or even the wilful misconduct of election officers in performing the duty cast upon them. The object of election is to ascertain the popular will, and not to thwart it. The object of election laws is to secure the rights of *duly qualified electors,* and not to defeat them. Statutory regulations are enacted to secure freedom of choice and to prevent fraud, and not by technical obstructions to make the right of voting insecure and difficult." (Italics supplied.)

Also see, State ex rel. Dosland v. Holm, 202 Minn. 500, 279 N. W. 218.

The petitioners here are residents and qualified voters in the Ninth Congressional District, both being residents of the city of Fergus Falls, Otter Tail County, Minnesota. They contend that Duren's certificate is invalid; that it does not, among other alleged deficiencies, contain a sufficient number of electors qualified to nominate by. signing this petition. They seek by their petition and supporting documents to prevent the placing of Duren's name on the ballots for the November 4 general election. Pursuant to an order to show cause, August J. Duren was served with notice of hearing scheduled before this court on October 10, 1958, at 10 a. m., at his residence at North Union on Highway 52, Fergus Falls, Minnesota. Such service was made on Duren October 8, 1958, for the purpose of making available to him the right to intervene and file such counteraffidavits or present such proof as he might deem advisable in support of his certificate either at the time of or before the hearing.

A reading of § 202.19 makes the legislative intent clear that the number of signatures required on the certificate of nomination must be equal to 5 percent of the entire vote cast in the last preceding general election or 500, whichever is the least. As will be seen from the certificate of the secretary of state, which has been attached to the documents filed by the petitioner, there were 111,853 votes cast for the

office of United States representative in Congress from the Ninth Congressional District in the last preceding general election held in November 1956. Five percent of this number is 5,593. It therefore became incumbent upon Duren to obtain 500 proper signatures of qualified voters or electors who had taken an oath in the form prescribed by § 202.22.

The addresses of all the signers appear upon the certificate as filed subject to but one or two exceptions. This fact facilitates checking the registration list of those who have qualified as registered voters in the city of Fergus Falls, Otter Tail County, Minnesota, located within the Ninth Congressional District to vote at the primary and general elections in said city and likewise to determine what registered voters within the city of Fergus Falls voted at the primary election of 1958.

One of the supporting documents filed by the petitioners is the affidavit of Harold H. Drews, acting commissioner of voter registration in the city of Fergus Falls, who states that he now has in his possession, pertaining to his duty as such officer, a complete and up-to-date list of registered and qualified voters within said city, such records indicating which of said qualified, registered voters cast their ballots at the primary election held September 9, 1958. Mr. Drews further says that he has examined a certified copy of Duren's certificate of nomination consisting of 26 pages; that he has compared the names and addresses of residents of the city of Fergus Falls appearing on Duren's petition for nomination against the registered voters list in the commissioner's office and upon such examination and comparison finds that 70 of the signers appearing on the nominating petition were registered voters and did vote in the preceding primary election held on September 9, 1958.

It appears from the petition for nomination as certified that the names of 520 purported signers are attached thereto and that the one who administered the oath to each of said persons was Grace Duren, the wife of August J. Duren, who seeks to have his name placed on the ballot. Other separate affidavits and supplemental affidavits filed in support of petition here disclose that eight persons whose names appear upon the petition as signers say that they never were administered any oath by a notary and that they did not sign the certificate. Nine persons say that they voted in the primary election; that they were never

informed by anyone that they were not entitled to sign the petition if they had voted at the preceding primary; and that they were never at any time contacted by a notary nor was a notary present when they signed the certificate. In another affidavit the affiant, a handwriting expert, deposes and says that seven signatures were written in the same identical hand with those of other signatures; that three names are duplications of names already on the certificate. There is also proof by affidavit that two persons whose names appear as signers upon the certificate are deceased. It should be made clear at this point that there has been no appearance or intervention on the part of Duren and that no objection has been interposed that the petitioners have not been diligent in the matter of instituting their proceedings under § 205.78.

Our election laws establish that the act of voting in a primary election disqualifies the signer under the particular facts surrounding the nominating petition of Duren. It is clear that to effect an independent nomination there must under our statutes be a minimum of 500 valid signatures. Striking from the nominating petition the 70 signatures of those who voted in the September 1958 primary election, together with the signatures of the others that appear to be disqualified, reduces the number of apparently valid signatures attached to the nominating certificate to approximately 421, a number substantially less than the legal minimum requirement.

No question has been raised but what the secretary of state acted in good faith based upon the certificate of nomination as it was presented to him. The petition on its face appeared to comply with the statutory requirements. However the law, recognizing that officials must act on nominating petitions when presented, has provided safeguards and means to correct errors or mistakes if such come about before the ballots are given to the voters. Such errors may under § 205.78 be rectified summarily by the courts therein designated before such ballots have been distributed to the voters for voting.

Of necessity the burden is upon the challenger, the petitioners here, to establish pursuant to § 205.78 the truth of the facts alleged in the manner therein provided if they do not appear on the face of the petition. In the absence of any intervention on the part of the nominee in opposition to the petition herein, the affidavits and supporting docu-

ments filed by the petitioners remain unchallenged. The contents of those supporting documents must therefore, upon the record as it stands, be accepted as proof establishing the insufficiency of the Duren nominating petition and certificate to satisfy the statutory requirements of §§ 202.19 to 202.22.

It is apparent that the procedure followed by the petitioners here is the same as that followed in Allen v. Holm, 243 Minn. 96, 66 N. W. (2d) 610. It is also to be observed that § 205.78, under which the present original proceedings were instituted in this court, is a substantial reenactment of G. S. 1894, § 48, which was considered by this court in Pottgieser v. District Court, 81 Minn. 420, 84 N. W. 1115, where it was sought to correct the official ballot to be used in a city election by striking the names of relators therefrom. This court in that case held that the statute was not unconstitutional on the ground that it failed to provide for notice to the interested parties. In Higgins v. Berg, 74 Minn. 11, 76 N. W. 788, 42 L. R. A. 245, this court assumed, because of the absolute necessity of a speedy decision in an original proceeding of a similar nature, that the statute by virtue of which the proceeding was instituted was constitutional; that it was the mandate of the legislature and presumed to be constitutional.

This court has heretofore entertained original jurisdiction under G. S. 1894, § 48, and G. S. 1913, § 398, providing for a summary correction of ballots to be used at elections, the provisions of which were substantially the same as § 205.78, in the following cases: Goodspeed v. Schmahl, 127 Minn. 521, 149 N. W. 1069; Fish v. Erickson, 126 Minn. 525, 147 N. W. 426; State ex rel. Day v. Hanson, 93 Minn. 178, 100 N. W. 1124, 102 N. W. 209; Davidson v. Hanson, 87 Minn. 211, 91 N. W. 1124, 92 N. W. 93; Higgins v. Berg, 74 Minn. 11, 76 N. W. 788, 42 L. R. A. 245.

In Johnson v. Bauchle, 149 Minn. 144, 146, 182 N. W. 987, Mr. Justice Holt, speaking for this court and recognizing the purpose of § 205.78, then G. S. 1913, § 398, said: "This court has already indicated, what seems to be the rule elsewhere, that whether or not a person is to appear on the official ballot as a candidate for election, should be settled before the ballot is handed to the voter at the poll, * * *."

An examination of §§ 202.19 to 202.22 makes it clear that no person who has voted at a primary shall be eligible as a petitioner for any nomination to an office for which nominees were voted upon at such primary and that the petitioner for any nomination, such as here involved, must take the oath prescribed in § 202.22 and be sworn at the time of signing, stating as a part of said oath that such petitioner did not vote at the preceding primary election. These provisions are mandatory.

It should therefore require no argument, where petitioners' affidavits stand unchallenged, to demonstrate that the nominating petition contains signatures thereto which are invalid and that under the circumstances it is fatally defective. See, Fetsch v. Holm, 236 Minn. 158, 52 N. W. (2d) 113. Since in our opinion this defect alone is fatal to the validity of the petition, any further discussion of other claimed defects will add nothing to the resulting decision and no further attention will be given to them.

We conclude that §§ 202.19 to 202.22, relating to nomination of candidates for election by petition, are included by inference in § 205.78.

We are, therefore, obliged to hold that an error occurred in placing the name of August J. Duren, as an independent nominee for Congress, upon certain official ballots printed for use in the Ninth Congressional District at the general election to be held November 4, 1958. It was therefore ordered that respondent remove and omit the name upon the official ballots.[1]

MR. CHIEF JUSTICE DELL and MR. JUSTICE KNUTSON took no part in the consideration or decision of this case.

---

[1]IT IS ORDERED by the Court that the name of August J. Duren, as nominee for Congress by petition, be removed and omitted from any and all ballots which have been or are to be printed and used in the Ninth Congressional District, State of Minnesota, at the General Election set for Tuesday, November 4, 1958. A formal opinion will follow.

Dated October 10, 1958.

Martin A. Nelson
JUSTICE OF THE SUPREME COURT