

# In the Missouri Court of Appeals
# Eastern District

## SPECIAL DIVISION

| | | |
|---|---|---|
| RODNEY GEE, et al., | ) | No. ED113323 |
| | ) | |
| Plaintiffs/Respondents, | ) | |
| v. | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| | ) | Cause No. 25SL-CC01345 |
| ST. LOUIS COUNTY BOARD | ) | |
| OF ELECTION COMMISSIONERS, | ) | |
| | ) | |
| Defendant/Respondent, | ) | Honorable Bruce F. Hilton |
| | ) | |
| and | ) | |
| | ) | Filed: April 4, 2025 |
| ST. LOUIS COUNTY COUNCIL, | ) | |
| | ) | |
| Defendant/Appellant. | ) | |

## Introduction

Appellant St. Louis County Council (SLCC) appeals the circuit court's judgment removing SLCC proposed amendment (Proposition B)[1] from the April 8 ballot pursuant to Section 115.127.3. Proposition B would empower SLCC to remove the county counselor and any county department director upon the agreement of five of the seven council members, a super majority. After SLCC approved Proposition B and certified it for voter consideration, St. Louis County department directors Rodney Gee, Tony Smee, Brian Schaffer, Kanika Cunningham, John Bales

---

[1] Proposition B is an amendment to the St. Louis County Charter, adding Section 2.190.3 and amending both Section 4.020, affecting the removal process for department directors and Section 5.020, affecting the removal process for the county counselor.

1

and Courtney Whiteside (Respondents) filed suit, initially requesting that the St. Louis County circuit court remove or strike Proposition B because the proposal's language is misleading, insufficient, inaccurate, argumentative, prejudicial and unfair.[2]

After the circuit court entered judgment on February 11, this court granted Appellants' motion to stay the judgment, ordering that the proposal remain on the ballot and allowing the parties an opportunity to brief the applicable issues on appeal. In a subsequent order to show cause, this court directed the parties to address whether this matter is moot since Missouri law requires that a ballot issue may not be removed less than eight weeks before election day. Section 115.127.3.[3]

In their three-point appeal, SLCC initially asserts the circuit court's injunctive relief is moot because our court entered the stay order allowing Proposition B to remain on the ballot and the statutory removal deadline passed. Section 115.127.3. In Point II, however, SLCC requests that this court reverse the circuit court's declaratory judgment, entered simultaneously with the injunctive relief, arguing that Respondents lacked standing to file their claim and the trial court lacked the authority to examine the Proposition B language before concluding that it is misleading, insufficient, inaccurate, argumentative, prejudicial and unfair. When arguing that Respondents' challenge is premature, SLCC concedes that chapter 115's statutory language permits election contests but argues that the Revised Statutes of Missouri do not allow challenges to local ballot language. In Point III, SLCC directs us to clarify that the existing statutes and ordinances do not authorize an election contest based on the Proposition B language.

In their two-point brief, Respondents contend that the injunctive portion of the circuit court

---

[2] At the January 7 board meeting, SLCC initially introduced Ordinance 29,241, containing a ballot title known as Proposition B. On January 21, SLCC passed an amended version by a vote of 6-1. The following day, Proposition B was certified and submitted to the Board of Elections. On February 5, Respondents filed their Petition for Declaratory Relief and Order in the St. Louis County circuit court.

[3] February 11 precedes the April 8 election date by eight weeks.

2

judgment is moot under Point I. In Point II, however, they argue that the circuit court's declaratory judgment should be affirmed because the trial court correctly determined that the Proposition B language is misleading, insufficient, inaccurate, argumentative, prejudicial and unfair. When responding to criticism that the circuit court lacked the authority to act, they remind us that the trial court cited the Declaratory Judgment Act which grants the court broad powers pursuant to Section 527.010. Respondents also dispute their preelection challenge is premature. Distinguishing the significance of substantive versus nonsubstantive challenges to ballot language, they contend that their dispute is rooted in a nonsubstantive preelection issue which is ripe for appeal according to *City of Kansas City v. Kansas City Bd. of Election Comm'rs*, 505 S.W.3d 795, 799 (Mo. banc 2017). Considering the deadline passed allowing election officials to remove Proposition B from the April 8 ballot, Respondents request that this court order election officials to refrain from counting any ballots cast.

We agree that the injunctive portion of the appeal is moot since the deadline to remove the Proposition B ballot language passed. Additionally, we conclude that the public interest exception applies to the mootness doctrine, permitting us to review the declaratory judgment entered by the circuit court and as requested by both parties. *State ex rel. Dienoff v. Galkowski*, 426 S.W.3d 633, 638-39 (Mo. App. E.D. 2014) (quoting *State ex rel. Mo. Pub. Def. Comm'n v. Waters*, 370 S.W.3d 592, 603 (Mo. banc 2012)). We are sympathetic to arguments that portions of Proposition B may contain misleading language and we equally recognize that Proposition B potentially conflicts with other sections in the St. Louis County Charter (Charter) regarding the removal of other county department directors. While understanding this, we hold 1) the circuit court lacks the authority to review or act on local ballot matters and is powerless to remove Proposition B from the ballot absent specific statutory authority (*Galkowski*, 426 S.W.3d at 640-41); 2) the circuit court is further precluded from awarding declaratory relief because Respondents failed to demonstrate a

3

justiciable controversy exists (*Mo. Soybean Ass'n v. Mo. Clean Water Comm'n*, 102 S.W.3d 10, 25 (Mo. banc 2003)) and 3) Respondents' claim is not ripe for judicial review because their preelection challenge is premature (*Kansas City Bd. of Election Comm'rs*, 505 S.W.3d at 799). Even if voters approve Proposition B on April 8, Respondents retain the ability to challenge the outcome following the election pursuant to Missouri law. Section 115.553.2; *Kansas City Bd. of Election Comm'rs*, 505 S.W.3d at 799. Finally, we deny SLCC's requested relief in their final point because courts will not issue an advisory opinion as to whether a particular proposal, if adopted, would violate a superseding law of this state or the United States Constitution. *Buchanan v. Kirkpatrick*, 615 S.W.2d 6, 12 (Mo. banc 1981).

Since the deadline to remove Proposition B from the April 8 ballot passed, the injunctive portion of the appeal is dismissed as moot. SLCC's Point II is granted; the circuit court's declaratory judgment is reversed and set aside and Respondents' Petition is dismissed. Rule 84.14. Respondents' requested relief under Point II is denied and SLCC's Point III is also denied.

### Background

On January 21, 2025, the SLCC enacted Ordinance No. 29,241, allowing St. Louis County voters to consider Proposition B or proposed amendments to the St. Louis County Charter (Charter) on the April 8 ballot. Proposition B states:

Shall Section 2.190.3 be added to and Sections 4.020 and 5.020 of the Charter of St. Louis County be amended to restore checks and balances, oversight, and accountability of the executive branch by authorizing removal of the St. Louis County Counselor or any Department Director by five of the seven Councilmembers as set forth in Exhibit A of Ordinance No. 29,241 on file with the St. Louis County Administrative Director and the St. Louis County Board of Election Commissioners? The cost of legal counsel authorized if this amendment passes has no fiscal impact on taxes.
□YES

□NO

Each Respondent serves in a different capacity as the director of a different department within St. Louis County government, specifically the Department of Administration, Department

4

of Revenue, Department of Parks and Recreation, Department of Public Health, Department of Aviation and the Municipal Court. St. Louis County Charter, art. IV, section 4.020. Currently, the County Executive appoints a candidate to serve as the director of the respective county office and the SLCC can confirm or deny the appointment by majority vote within 30 days. St. Louis County Charter, art. III, section 3.0501(a). Assuming SLCC approves the candidate, the department director serves at the pleasure of the County Executive who retains the power of removal exclusively. St. Louis County Charter, art. IV, section 4.020.[4]

If voters approve Proposition B, Section 2.190.3 would be added to the Charter, allowing five of the seven members of the SLCC to remove a department director. Voter approval would further require section 4.020 to be amended, allowing either the County Executive or the SLCC to remove a director. Similarly, section 5.020 would be amended, allowing either the County Executive or the SLCC to remove the county counselor.

On February 5 and only six days prior to the deadline to remove the ballot initiative, Respondents filed their petition in St. Louis County circuit court asking the court to enter a declaratory judgment finding that the ballot language is misleading, insufficient, inaccurate, argumentative, prejudicial and unfair and further requesting that the court remove Proposition B from the April 8 ballot. This matter was heard on stipulated facts as submitted on the briefs, motions and pleadings filed by the parties.

On February 11, the circuit court entered a two-part judgment. Initially, the court found Proposition B's language to be "misleading, insufficient, inaccurate, argumentative, prejudicial and unfair," pursuant to the Declaratory Judgment Act under Section 527.010 *et seq*. In the latter

---

[4] While Section 4.020 outlines the current appointment and removal process for the department directors, Section 5.020 describes a mostly similar process applicable to the county counselor.

part of the judgment, the court granted injunctive relief and ordered Proposition B removed from the ballot pursuant to Section 115.127.3. On the same day, SLCC filed a motion to expedite the appeal with this court, requesting an immediate review because any revisions, deletions or edits to the April 8 ballot cannot occur less than eight weeks before the election, specifically not after February 11. Section 115.125.3. The Missouri Supreme Court interprets this statutory language to prohibit any modifications after the eighth Tuesday before the election. *Vernon Cnty. Republican Comm. v. Lee*, 692 S.W.3d 439, 442 (Mo. App. W.D. 2024) (citing *Dotson v. Kander*, 435 S.W.3d 643, 644 (Mo. banc 2014)). Subsequently, this court sustained SLCC's motion, temporarily staying the circuit court's February 11 order to consider the appeal.

### Standard of Review

When a case is tried on stipulated facts, a reviewing court only determines whether the circuit court drew the proper legal conclusions from the stipulated facts. *Coleman v. Ashcroft*, 696 S.W.3d 347, 357 (Mo. banc 2024). "'Where…the parties simply argue the fairness and sufficiency of the summary statement [or fair ballot language] based upon stipulated facts, joint exhibits, and undisputed facts, the only question on appeal is whether the trial court drew the proper conclusions which we review *de novo*.'" *Fitzpatrick v. Ashcroft*, 640 S.W.3d 110, 125 (Mo. App. W.D. 2022) (quoting *Boeving v. Kander*, 493 S.W.3d 865, 873 (Mo. App. W.D. 2016)).

### Analysis
*Point I, Injunctive Portion of Judgment*

In Point I, we consider the injunctive portion of the judgment where the circuit court ordered Proposition B removed from the April 8 ballot. "When an event occurs that makes a court's decision unnecessary or makes granting effectual relief impossible, the case is moot, and generally the Court should dismiss it." *Carter v. Frederickson*, 568 S.W.3d 898, 901 (Mo. App. E.D. 2019) (citing *St. Louis Police Leadership Org. v. St. Louis Bd. of Police Comm'rs*, 465

6

S.W.3d 501, 506 (Mo. App. E.D. 2015)). "'To exercise appellate jurisdiction, there must be an actual controversy that is 'susceptible of some relief.'" *Vernon Cnty. Republican Comm.,* 692 S.W.3d at 441 (quoting *Dotson,* 435 S.W.3d at 644); *see also State ex rel. Reed v. Reardon,* 41 S.W.3d 470, 473 (Mo. banc 2001).

Both sides agree that this issue is moot after this court entered the stay order on February 11, effectively allowing Proposition B to remain on the April 8 ballot while the appellate process unfolded and providing the parties an opportunity to analyze the issues. Section 115.127.3 specifically prohibits removing any ballot measures less than eight weeks before an election. Section 115.127.3. The eight-week window shut after February 11, the final opportunity to alter, modify or delete the April 8 ballot language. Thus, the appellate portion addressing the injunctive relief is dismissed as moot.

*Point II, Declaratory Portion of Judgment*

Next, we consider Point II, where SLCC requests that this court reverse the circuit court's declaratory judgment and Respondents ask us to affirm the circuit court which concludes the ballot language is "misleading, insufficient, inaccurate, argumentative, prejudicial and unfair." Both sides request that we resolve this matter despite the mootness issue. "'A cause of action is moot when the question presented for decision seeks a judgment upon some matter which, if the judgment was rendered, would not have any practical effect upon any then existing controversy.'" *Galkowski,* 426 S.W.3d at 638-39 (quoting *Reardon,* 41 S.W.3d at 473). However, an exception to the mootness doctrine exists when "'a case presents an issue that (1) is of general public interest and importance, (2) will recur and (3) will evade appellate review in future live controversies.'" *Id.* at 639 (quoting *Waters,* 370 S.W.3d at 603). A court may exercise its discretion to hear a matter based on this exception, known as the public interest exception, when there is a legal principle at stake involving a judicial declaration. *Waters,* 370 S.W.3d at 603. We conclude that these factors are satisfied in

7

the present matter and, coupled with the parties requesting a decision, we agree to review the trial court's authority to enter the declaratory judgment, finding the ballot language "misleading, insufficient, inaccurate, argumentative, prejudicial and unfair."

### i. The trial court lacks the authority to review or act on Respondents' preelection challenge.

An election contest "is not a common law or equitable right." *Bd. of Election Comm'rs of St. Louis Cnty. v. Knipp*, 784 S.W.2d 797, 798 (Mo. banc 1990); *Missouri ex rel. Bouchard v. Grady*, 86 S.W.3d 121, 123 (Mo. App. E.D. 2002). Judicial relief is limited to what the statutes or ordinances allow. *Knipp*, 784 S.W.2d at 798; *Hockemeier v. Berra*, 641 S.W.2d 67, 68 (Mo. banc 1982); *Wright-Jones v. Johnson*, 256 S.W.3d 177, 180 (Mo. App. E.D. 2008). The authority of the trial court "'is confined strictly to statutory provisions governing election contests and the letter of the law is the limit of its power.'" *Galkowski*, 426 S.W.3d at 640 (quoting *State ex rel. Bushmeyer v. Cahill*, 575 S.W.2d 229, 232 (Mo. App. 1978)). When a petition does not "demonstrate a clear indication of legislative intent to create a private cause of action" a cognizable cause of action does not exist. *Sullivan v. City of Univ. City*, 677 S.W.3d 844, 853-54 (Mo. App. E.D. 2023). Chapter 116 "shall apply to elections on statewide ballot measures." Section 116.020.

SLCC argues that the trial court lacked the statutory authority to examine the Proposition B language before concluding that it is misleading, insufficient, inaccurate, argumentative, prejudicial and unfair. Respondents disagree, asserting that the trial court cited the Declaratory Judgment Act, specifically Section 527.010 *et seq.*, when determining the ballot language was deficient. Section 527.020 reads:

> "Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question or construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder." Section 527.020.

8

This court has previously held that the circuit court lacks subject matter jurisdiction to alter the ballot language presented for local voter approval. *Galkowski,* 426 S.W.3d at 641. In *Galkowski,* a St. Charles resident and taxpayer filed a petition asking the court to remove or rewrite a St. Charles Ambulance District ballot proposal prior to the local election, alleging that the proposition language was misleading. *Id.* at 635. Although unsure about its statutory authority, the trial court sided with the St. Charles resident and cited its "inherent" authority to act when rewriting the ballot proposal and attempting to make the language more "fair, neutral and unbiased" after concluding that it initially "read like a campaign brochure." *Id.* at 636-37. The Eastern District disagreed and reversed the trial court, rejecting its conclusion the trial court could rely on "inherent" authority as a substitute for an absence of statutory authority when tampering with local ballot language. *Id.* at 641 (citing *Knipp,* 784 S.W.2d at 798.) When reversing the trial court action, the Eastern District reminds litigants that their right to contest an election is allowed by statute. *Id.* at 640 (citing *Wright-Jones,* 256 S.W.3d at 180). In fact, the court can only award relief authorized by statute. *Id.* (citing *Knipp,* 784 S.W.2d at 798).

We are not insensitive to Respondents' allegations about Proposition B's problematic language but we determine that any relief is limited to what the statutes or ordinances allow. *Knipp,* 784 S.W.2d at 798; *Hockemeier,* 641 S.W.2d at 68; *Wright-Jones,* 256 S.W.3d at 180; *Galkowski,* 426 S.W.3d at 640 (quoting *Cahill,* 575 S.W.2d at 232) (Trial court authority "is confined strictly to statutory provisions governing election contests and the letter of the law is the limit of its power.") Respondents raise compelling concerns about the objectivity of the ballot language, asserting that Proposition's B language is misleading, insufficient, inaccurate, argumentative, prejudicial and unfair when characterizing the amendments as "restor[ing] checks and balances, oversight and accountability of the executive branch." While the *Galkowski* trial court relied on 'inherent" authority to rewrite a local proposition, the trial court in the present matter relies on

9

broad authority of the Declaratory Judgment Act to remove Proposition B. However, courts advise that relying on "inherent authority cannot substitute for the absence of statutory authority" as reason to act in municipal elections. *Galkowski,* 426 S.W.3d at 641 (citing *Knipp,* 784 S.W.2d at 798).

Undoubtedly, the Proposition B language could be improved to reflect a more balanced summary for voter consideration, just like the *Galkowski* trial court sought to make that proposal more "fair, neutral and unbiased," but Missouri law discourages courts from intervening absent statutory authorization. *Id.* at 636-40 (citing *Wright-Jones,* 256 S.W.3d at 180). In sum, we must honor the intentions of the General Assembly and resist acting when the elected representatives have not specifically authorized this form of judicial review and relief. *Id.* at 641 (citing *Anani v. Griep,* 406 S.W.3d 479, 482 (Mo. App. E.D. 2013); *see also Harrison v. M.F.A. Mut. Ins. Co.,* 607 S.W.2d 137, 143 (Mo. banc 1980) ("...Provisions not plainly written in the law, or necessarily implied from what is written, should not be added by a court under the guise of construction to accomplish an end the court deems beneficial.").

  *ii.*  Respondents' claim is not a justiciable controversy because it is a hypothetical scenario thus precluding relief under the Declaratory Judgment Act.

Further, Respondents fail to satisfy one of the requirements necessary for declaratory relief, specifically they have not demonstrated that their claim is a justiciable controversy as required under Missouri law. "To grant a declaratory judgment, the court must be presented with: (1) a justiciable controversy that presents a real, substantial, presently-existing controversy admitting of specific relief, as distinguished from an advisory decree upon a purely hypothetical situation; (2) a plaintiff with a legally protectable interest at stake, 'consisting of a pecuniary or personal interest directly at issue and subject to immediate or prospective consequential relief;' (3) a controversy ripe for judicial determination; and (4) an inadequate remedy at law." *Mo. Soybean Ass'n,* 102

10

S.W.3d at 25 (quoting *Northgate Apartments, L.P. v. City of N. Kansas City*, 45 S.W.3d 475, 479 (Mo. App. W.D. 2001)).

Respondents' allegations about removal are not rooted in a "presently-existing controversy" but rather are a "purely hypothetical situation." *Id.* (quoting *Northgate Apartments, L.P.*, 45 S.W.3d at 479). The Missouri Supreme Court determined that Respondents cannot utilize a declaratory judgment to resolve hypothetical scenarios. *M.F.A. Mut. Ins. Co. v. Hill*, 320 S.W.2d 559, 564 (Mo. 1959). Multiple, future events must occur before Respondents face removal, beginning with voters approving Proposition B and ending with a SLCC supermajority vote. The SLCC removal scenario is a hypothetical situation or speculative in nature, placing Respondents' claim beyond the court's review. *Id.* ("The declaratory judgment act is not designed to adjudicate hypothetical or speculative situations...").

Equally concerning, Respondents assert Proposition B deceives voters when asserting "this amendment...has no fiscal impact on taxes." To the contrary, Respondents contend that ballot language invites future legal challenges, potential lawsuits associated with wrongful termination and further expenditures needed to clarify the scope of Proposition B, if ultimately approved by voters. Undoubtedly, the present litigation has already proven costly to St. Louis County tax payers. Despite Respondents forecasting a troubling future, and fiscal consequences, this does not facilitate a pathway to court review. These hypothetical scenarios fall outside what Missouri law defines as a justiciable controversy, precluding relief under the Declaratory Judgment Act. *Mo. Soybean Ass'n*, 102 S.W.3d at 25. Further, the courts hold the appropriate time to entertain hypothetical disputes is following voter approval. *Kansas City Bd. of Election Comm'rs*, 505 S.W.3d at 799.

iii. *Kansas City Bd. of Election Comm'rs* also holds that preelection challenges are premature.

11

Respondents assert that their challenges to Proposition B's language and fiscal impact are ripe for judicial determination. While they agree that substantive challenges to a local ballot measure are premature, all other preelection challenges such as challenges to the form of a local ballot measure are not. As support, they point to *Kansas City Bd. of Election Comm'rs*, 505 S. W.3d at 798-99, where the Missouri Supreme Court "extended a bright-line test" after *Boeving v. Kander*, 496 S.W.3d 498, 511 (Mo. banc 2016)[5] that "preelection challenges are limited to claims that the procedures for submitting a proposal to the voters were not followed." *Kansas City Bd. of Election Comm'rs*, 505 S. W.3d at 798; *see also Brown v. Carnahan*, 370 S.W.3d 637, 645 (Mo. banc 1981). We are unpersuaded by Respondent's interpretation of the bright-line test, as identified in *Kansas City Bd. of Election Comm'rs*. *Id.* at 798.

In *Kansas City Bd. of Election Comm'rs*, a group of Kansas City residents submitted a ballot initiative establishing a minimum wage for Kansas City but the opponents persuaded the circuit court to strike the proposal before the election because the proposed ordinance contradicted a state statute. *Id.* at 796-97. The Missouri Supreme Court reversed the trial court and held the appropriate time to entertain this hypothetical dispute was following voter approval. *Id.* at 799. Respondents argue that their claims about the misleading ballot language and inaccurate fiscal summary are not substantive defects precluding preelection judicial review following *Boeving* and under *Kansas City Bd. of Election Comm'rs* but rather these deficiencies are what Respondents refer to as nonsubstative challenges which are susceptible to preelection judicial determination under the "bright-line test." *Id.* at 798. When distinguishing the "bright-line test," the *Kansas City*

---

[5] *Boeving* involves a citizen initiative where opponents rely on the relevant sections within chapter 116 to challenge the Secretary of State's decision to accept the signatures and place the initiative on a statewide ballot. *Boeving*, 496 S.W.3d at 501-06. This is distinguishable from our matter where opponents rely on the Declaratory Judgment Act, Section 527.010 *et seq.*, to challenge the proposition language and fiscal summary that county elected officials voted to place on a local - not statewide - ballot. While we previously discussed the inapplicability of the Declaratory Judgment Act as a mechanism to launch a preelection challenge to a local ballot measure, *Boeving* is further distinguishable from this matter because the *Boeving* opponents utilized chapter 116 as grounds for their objection which applies to statewide, not local ballot measures. *Boeving*, 496 S.W.3d at 506; Section 116.020.

12

*Bd. of Election Comm'rs* Court does not refer to nonsubstantive challenges but explains "preelection challenges are limited to claims that the procedures for submitting a proposal to voters were not followed." *Id.* at 798 (citing *Boeving,* 496 S.W.3d at 511); *see also Brown,* 370 S.W.3d at 645. When ruling against the opponents to the signature initiative in *Kansas City Bd. of Election Comm'rs,* the Missouri Supreme Court further distinguished that the "procedural requirements" may warrant a preelection challenge compared to a conflict of laws allegation which does not. 505 S.W.3d at 799. When isolating the activities justifying a preelection challenge, the Missouri Supreme Court identifies "signature gather[ing]," the "procedure used to submit the proposal" or the "form of the... petition," but nowhere does the Court identify the language of the ballot proposal, the ballot title, the proposal's summary statement or allegations about misleading or argumentative statements as conceivably justifying a party's preelection challenge, as Respondents advocate. *Id.*

Here, Respondents are not alleging that SLCC failed to follow the "procedural requirements" to place this matter on the ballot. *Id.* In other words, they do not assert that SLCC deviated from any statutory obligations or procedural requirements before publicly introducing the proposal, passing an amended version at a later meeting and ultimately submitting it to the Board of Elections. Rather, they challenge the substance of the language contained within Proposition B, specifically the misleading nature of both the ballot language and the fiscal summary. These types of challenges do not warrant preelection judicial review, effectively requiring the measure to remain on the ballot. *Id.*

Notably, the present factual circumstances closely resemble the events in *Kansas City Bd. of Election Comm'rs* where opponents asserted a conflict of laws allegation, specifically that a proposed local ordinance clashed with a state statute. *Kansas City Bd. of Election Comm'rs,* 505 S.W.3d at 796-97. Here, Respondents assert that both the Police Chief, or superintendent of police,

13

and the Director of Judicial Administration are not expressly exempted from Proposition B, authorizing the SLCC to remove them as well. They argue the ballot language is misleading because this amended Charter version conflicts with another current Charter provision empowering the Board of Police Commissioners to remove the Police Chief. St. Louis County Charter art. IV, section 4.270.7(2). Along similar lines they argue, Proposition B is equally misleading because it conflicts with the existing Charter language affecting the Director of Judicial Administration who currently is appointed and removed by a majority of the circuit court and associate circuit court judges. St. Louis County Charter, art. IV, section 4.430.

To be clear, Respondents assert that they are not specifically arguing that the conflicting language between Proposition B and the Charter justify preelection court review. Rather, they assert that the conflict contributes to the proposition's misleading language as well as invites future legal challenges, effectively escalating costs. We reject their argument to isolate the conflicting language allegation as solely intended to portray Proposition B as argumentative and/or misleading. Whether Respondents describe the conflicting language between Proposition B and the Charter as misleading and/or argumentative, they are still asserting a conflict of laws exists, a factual circumstance that contributes to our analysis and determination that Respondents' claim is premature for court review. *Kansas City Bd. of Election Comm'rs*, 505 S.W.3d at 799.

Courts should not prohibit voters from considering the proposed local ordinance that conflicts with an existing law any more "than they should enjoin the City Council from considering the same subject. Instead,…the proper course is to wait and see if the proposal is enacted before considering challenges to an ordinance's substance or effect." *Kansas City Bd. of Election Comm'rs*, 505 S.W.3d at 799. Afterall, Missouri courts are obliged to enforce ripeness and standing issues when considering these matters and should not anticipate that voters will pass an unconstitutional measure with any more likelihood than the legislature would be inclined to do so.

14

*Id.* (citing *Boeving,* 496 S.W.3d at 511 n.8). To act contrary to this, courts risk intruding in the democratic process for the sake of judicial economy. *Id.* (citing *Boeving,* 496 S.W.3d at 511 n.8). For these collective reasons, SLCC's Point II is granted and Respondents' requested relief is denied under their Point II.

### *Point III, Post-Election Contest*

In Point III, Appellants direct us to issue a decision confirming that there is not any ordinance or statute, including Section 115.553, authorizing an election contest challenging the language of the SLCC-created Ballot Title and Proposal. We decline to do so, absent our previously discussed observations within this opinion. Courts will not issue an advisory opinion as to whether a particular proposal, if adopted, would violate a superseding law of this state or the United States Constitution. *Buchanan,* 615 S.W.2d at 12. Moreover, courts should resist adjudicating substantive, preelection challenges to a ballot measure because this requires the court provide an advisory opinion which "'violates ripeness requirements…and constitutes unwarranted interference with a legislative process.'" *Galkowski,* 426 S.W.3d at 641 n.14 (citing *Missourians to Protect the Initiative Process v. Blunt,* 799 S.W.2d 824, 833 (Mo. banc 1990) (Rendlen, J., dissenting); *see also* James D. Gordon III & David B. Magleby, *Pre-election Judicial Review of Initiatives and Referendums,* 64 Notre Dame L.Rev. 298 (1989). Point III is denied.

### Conclusion

Like the learned circuit court, we do not make this decision lightly. As previously stated, we remain concerned about the ballot word choice and potential fiscal impact but we balance these concerns with removing a ballot proposal from voter consideration. And while we embrace the concept of courts using their inherent authority to act, statutory considerations limit this power involving election matters.

The appeal from the injunctive portion of the judgment under Point I is dismissed as moot

15

since the deadline to remove the ballot language has passed. Additionally, we conclude that the public interest exception applies to the mootness doctrine, allowing us to review and hold the circuit court lacks the authority to grant declaratory relief on local ballot matters and is powerless to remove Proposition B from the ballot absent specific statutory authority. *Galkowski*, 426 S.W.3d 633. Further, Respondents have failed to identify a justiciable controversy which is required for declaratory relief. *Mo. Soybean Ass'n*, 102 S.W.3d at 25. Finally, Respondents' preelection challenge is premature, under Missouri law. *Kansas City Bd. of Election Comm'rs*, 505 S.W.3d at 799. SLCC's Point II is granted and Respondents' requested relief under Point II is denied. SLCC's Point III is denied and dismissed because we decline to issue what we believe Appellants are requesting - an advisory opinion. *Buchanan*, 615 S.W.2d at 12. The injunctive portion of the judgment is dismissed as moot. The declaratory judgment is reversed and set aside and Respondent's Petition is dismissed. Rule 84.14.

_____
Thomas C. Clark II, C.J.

Philip M. Hess, J. and
James M. Dowd, J., concur.

16